## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Isaac Kriegman,<br><br>       Plaintiff,<br><br>v.<br><br>Thomson Reuters, Melissa Budde, Cristina Juvier, Isabelle Moulinier, and Kami Peterson,<br><br>       Defendants. | Court File No.: 24-CV-11489-MJJ<br><br>**DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT AND JURY DEMAND** |

Defendants Thomson Reuters, Melissa Budde, Cristina Juvier, Isabelle Moulinier, and Kami Peterson (collectively, "Defendants") for their Answer to the Complaint of Plaintiff Isaac Kriegman state that except as hereinafter expressly admitted, qualified, or otherwise answered, they deny each and every allegation in Kriegman's Complaint.

Defendants further state as follows:

### ANSWER

1.     Defendants deny that Thomson Reuters ("Thomson Reuters" or "the Company") subjected Isaac Kriegman to a racially hostile environment, that Thomson Reuters terminated Kriegman in retaliation for complaining about an allegedly racially hostile environment, and that Kriegman is entitled to the relief requested or to any relief whatsoever. Defendants admit that Thomson Reuters terminated Kriegman's employment. The remainder of Paragraph 1 consists of a characterization of this suit and the requested relief, to which no response is required.

2.     Defendants deny that Defendants Melissa Budde, Cristina Juvier, Isabelle Moulinier, and Kami Peterson (together, the "Individual Defendants") interfered with Kriegman's rights and deny that Kriegman is entitled to relief under Mass. Gen. Laws ch. 151B,

§ 4(4A), or to any relief whatsoever. Defendants admit that Kriegman names Budde, Juvier, Moulinier, and Peterson as defendants in this matter.

3.    Defendants affirmatively state that this paragraph accurately quotes without attribution from *Shaw v. Reno*, 509 U.S. 630, 643 (1993). Defendants deny that they "[c]lassifi[ed] . . . citizens . . . on the basis of race."

4.    Defendants deny the allegations in Paragraph 4.

5.    Defendants deny that Kriegman experienced a "racially hostile environment" at Thomson Reuters and deny that Thomson Reuters Human Resources did not address his claim that he experienced a hostile work environment. Defendants admit that Kriegman claimed to his supervisor and individuals in Thomson Reuters Human Resources that he was experiencing a "hostile work environment" and communicated this claim to a large number of Thomson Reuters employees, including some senior leaders.

6.    Defendants admit only that Thomson Reuters terminated Plaintiff's employment. Defendants otherwise deny the allegations in Paragraph 6.

7.    Defendants deny the allegations in Paragraph 7. Defendants affirmatively state that until September 30, 2020, Thomson Reuters was a foreign corporation doing business in the Commonwealth of Massachusetts with a principal place of business at 22 Thomson Place, Boston, Massachusetts, and that as of October 1, 2020, Thomson Reuters no longer has a principal place of business in Massachusetts.

8.    Defendants admit only that the interactions between Budde and Kriegman alleged in the Complaint took place while both were employees of Thomson Reuters and otherwise deny the allegations in Paragraph 8. Defendants affirmatively state that at all times relevant to this case, Budde resided and worked in Minnesota.

9.    Defendants admit only that the interactions between Juvier and Kriegman alleged in the Complaint took place while both were employees of Thomson Reuters and otherwise deny the allegations in Paragraph 9. Defendants affirmatively state that at all times relevant to this case, Juvier resided and worked in New York.

10.    Defendants admit only that the interactions between Moulinier and Kriegman alleged in the Complaint took place while both were employees of Thomson Reuters and that Moulinier supervised and exerted authority over Kriegman. Defendants otherwise deny the allegations in Paragraph 10. Defendants affirmatively state that at all times relevant to this case, Moulinier resided and worked in Minnesota.

11.    Defendants admit only that the interactions between Peterson and Kriegman alleged in the Complaint took place while both were employees of Thomson Reuters and otherwise deny the allegations in Paragraph 11. Defendants affirmatively state that at all times relevant to this case, Peterson resided and worked in Minnesota.

12.    Defendants admit only that Kriegman's employment at Thomson Reuters terminated in June 2021. Defendants lack knowledge or information sufficient to admit or deny the remainder of the allegations in this paragraph.

13.    Defendants admit the allegations in Paragraph 13.

14.    Defendants admit only that in his Complaint, Kriegman alleges Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; that under 28 U.S.C. § 1331, federal district courts "have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States"; and that under 28 U.S.C. § 1343(a)(4), federal district courts have "original jurisdiction of any civil action authorized by law . . . to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil

rights." Defendants otherwise deny the allegations in Paragraph 14, including that Defendants violated Kriegman's civil rights.

15.    Defendants deny that Kriegman is entitled to the relief requested or to any relief whatsoever.

16.    Defendants admit that under 28 U.S.C. § 1367(a) this Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III."

17.    Defendants admit only that Kriegman was located in Massachusetts during the events alleged in this suit. Defendants otherwise deny the allegations in Paragraph 17.

18.    Defendants admit only that Kriegman was employed with Thomson Reuters for six years, that Thomson Reuters terminated Kriegman's employment in June 2021, that Kriegman's last title at Thomson Reuters was Director, Data Science, and that Kriegman had no documented disciplinary issues at Thomson Reuters before 2021.  Defendants affirmatively state that Thomson Reuters does not designate whether employees are "in good standing." Defendants otherwise deny the allegations in Paragraph 18.

19.    Defendants admit the allegations in Paragraph 19.

20.    Defendants deny the allegations in Paragraph 20. Defendants affirmatively state that Thomson Reuters' Boston office closed on September 30, 2020, and that Kriegman worked from home and was administratively tied to Thomson Reuters' 3 Times Square, New York office from October 1, 2020 until his termination on June 7, 2021.

21.    Defendants deny the allegations in Paragraph 21.

22.     Defendants admit that Kriegman repeatedly claimed that he was experiencing a purportedly hostile work environment, and that Thomson Reuters terminated Kriegman's employment. Defendants otherwise deny the allegations in Paragraph 22.

23.     Defendants lack knowledge or information sufficient to admit or deny what Kriegman noticed. Defendants otherwise deny the allegations in Paragraph 23, including but not limited to that "materials containing racial stereotypes and insults were routinely shared by [Thomson Reuters] staff to The Hub."

24.     Defendants admit only that The Hub was one internal communications channel through which Thomson Reuters shared Company information and communications. Defendants deny that The Hub was the only channel or means used by the Company to distribute such information.

25.     Defendants admit only that The Hub collected certain Company information, such as information about events; that The Hub was a means through which employees could share resources and perspectives; and that employees received notifications of some posts on The Hub. Defendants deny the remaining allegations in this paragraph, including but not limited to any allegation or implication that employees received a notification every time anything was posted on The Hub, or that employees, including Kriegman, were required either to receive notifications of, or to view, non-work-related posts on The Hub.

26.     Defendants deny the allegations in Paragraph 26. Defendants affirmatively state that The Hub informed employees of upcoming events and news about the Company; that occasionally some employees, including Kriegman, were expected to produce content for The Hub related to their job functions; and that the work-related content employees produced for the Hub could be evaluated.

5

27.     Defendants admit only that, while he was employed by Thomson Reuters, Kriegman could not opt out of accessing The Hub entirely.

28.     Defendants admit only that "D&I" was sometimes used as an abbreviation for "diversity and inclusion" on The Hub. Defendants otherwise deny the allegations in Paragraph 28. Defendants affirmatively state that Thomson Reuters provided opportunities for its employees to learn about matters related to diversity and inclusion, including unconscious bias, especially in the wake of the murder of George Floyd in May 2020. Defendants further state that a Diversity and Inclusion team member wrote a post on The Hub that included the statement, "Be part of the solution. Start your Thomson Reuters D&I learning journey."

29.     Defendants deny the allegations in Paragraph 29. Defendants affirmatively state that Thomson Reuters employees could interact with each other on The Hub, and that Thomson Reuters monitored postings to The Hub for compliance with Company policy and occasionally removed material from The Hub that did not meet Company standards or comply with Company policy.

30.     Defendants admit the allegations in Paragraph 30. Defendants affirmatively state that Thomson Reuters intended flagging to be a mechanism for employees to indicate a concern about a post, and that in practice employees could flag a post for any reason.

31.     Defendants admit the allegations in the first and second sentences of Paragraph 31. Defendants deny the allegations in the third and fourth sentences of Paragraph 31. Defendants affirmatively state that Thomson Reuters reinstated posts that met Company standards and complied with Company policy, and did not reinstate posts that did not meet Company standards and/or comply with Company policy.

32.     Defendants deny the allegations in Paragraph 32. Defendants affirmatively state that Thomson Reuters did not inform all employees of the identities of the individuals responsible for creating Company policies and standards for employee use of The Hub and for reviewing flagged posts, and that employees were provided access to The Hub Community Guidelines and the documents to which those Guidelines refer: Thomson Reuters Code of Business Ethics, Trust Principles, and Social Media Guidelines.

33.     Defendants deny the allegations in Paragraph 33.

34.     Defendants deny the allegations in Paragraph 34. Defendants affirmatively state that the following phrases appeared on The Hub in posts by one or more employees: "a pair of White Privilege glasses," "whiteness," and "white fragility."

35.     Defendants deny the allegations in Paragraph 35. Defendants affirmatively state that the article, "A Sociologist Examines the 'White Fragility' That Prevents White Americans from Confronting Racism," and the books *White Fragility: Why It's So Hard for White People to Talk About Racism* and *Habits of Whiteness* were cited by employees on The Hub.

36.     In response to Paragraph 36, Defendants state that Kriegman flagged at least 117 posts on one day, May 5, 2021, including several posts from months earlier; and that consistent with and pursuant to Company policy, Thomson Reuters removed the posts that Kriegman flagged, reviewed each post individually, and then reinstated these posts. Defendants otherwise deny the allegations in Paragraph 36.

37.     In response to Paragraph 37, Defendants state that employees occasionally recommended resources on The Hub, including articles and books, and that an episode of the podcast *The Longest Shortest Time* entitled "How to Not (Accidentally) Raise a Racist" was one of the resources identified in a voluntary 21-Day Racial Equity Habit Building Challenge ("the 21-

7

Day Challenge") sponsored by Thomson Reuters in July 2020. With respect to Kriegman's characterization of the episode, the episode speaks for itself. Defendants otherwise deny the allegations in Paragraph 37.

38.     In response to Paragraph 38, Defendants state that Katy Waldman's article, "A Sociologist Examines the 'White Fragility' That Prevents White Americans from Confronting Racism," was one of the resources shared on The Hub as part of the voluntary 21-Day Challenge in July 2020. With respect to Kriegman's characterization of this article, the article speaks for itself. Defendants otherwise deny the allegations in Paragraph 38.

39.     Defendants deny the allegations in Paragraph 39.

40.     With respect to the allegations in the first sentence of Paragraph 40, Defendants state that one Thomson Reuters employee who posted a comment regarding the article referenced in Paragraph 38 wrote, "[w]hite fragility 'holds racism in place' through systems of power. If we are unable to address the issue in the first place, there is no hope of implementing positive change. One of the most daunting aspects of the article is the fact that white liberals are the group most likely to perpetuate this ideology." Defendants deny that comments posted to The Hub were made "publicly," and further deny that Waldman's article is a book. With respect to the allegations in the second sentence of Paragraph 40, Defendants state that discussion of the resources for the voluntary 21-Day Challenge included use of the phrases "white culture" and "white community." Defendants deny the remaining allegations in Paragraph 40.

41.     Defendants deny the allegations in Paragraph 41, including but not limited to that any group of employees at Thomson Reuters were "subjected to comments on The Hub associating their skin color with negative characteristics."

8

42.    Defendants deny the allegations in Paragraph 42, including but not limited to that any group of employees at Thomson Reuters were "bombarded with negative racial stereotypes on The Hub."

43.    With respect to the allegations in Paragraph 43, Defendants state that Kriegman's characterization of unspecified posts as containing "similar negative comments and stereotypes" is too vague and imprecise for Defendants to possess knowledge sufficient to admit or deny. Defendants affirmatively state that to their knowledge and belief, posts and comments made on The Hub did not criticize minority employees because of their race.

44.    Defendants deny the allegations in Paragraph 44.

45.    Defendants deny the allegations in the first sentence of Paragraph 45. With respect to the allegations in the second sentence of this paragraph, Kriegman's reference to "these articles" is unclear and therefore Defendants are unable to admit or deny these allegations. Defendants admit the allegations in the third sentence of this paragraph. Defendants affirmatively state that in July 2020, Thomson Reuters invited employees to participate in the voluntary 21-Day Challenge; that the announcement about the 21-Day Challenge stated, *inter alia*, that "[s]uccessful change is often about building new habits into daily life," that the program was intended to "help you be a more effective ally as we a[ll] strive for equity and justice," and that one Thomson Reuters employee described the voluntary program as "your first step in the Thomson Reuters D&I learning journey."

46.    Defendants admit the allegations in Paragraph 46.

47.    Defendants deny the allegations in Paragraph 47.

48.    Defendants admit the allegations in the first sentence of Paragraph 48. Defendants deny the allegations in the second sentence of Paragraph 48.

49.    Defendants admit only that the statement "Black lives matter" was posted by employees on The Hub. Defendants deny the remaining allegations in this paragraph, including but not limited to that each use of the term "Black Lives Matter" "celebrat[ed]" a "movement" and that each use of the statement "Black Lives Matter" referred either to a movement or to the political organization Black Lives Matter Global Network Foundation, Inc.

50.    With respect to the allegations in Paragraph 50, Defendants state that one Thomson Reuters employee shared a post on The Hub about her voluntary choice to be "accountability partners" with a colleague and to "check in, share learnings and continue to grow" regarding issues surrounding racism and being part of the solution. Defendants deny the remaining allegations in Paragraph 50, including but not limited to any allegation or implication that one employee's personal reflection and suggestion constituted messaging or instruction from Thomson Reuters to its employees.

51.    With respect to the allegations in Paragraph 51, Defendants state that Thomson Reuters did not encourage employees "to spend time reflecting on" either "the positive characteristics of white people" or "the negative characteristics of non-white people," and that Thomson Reuters did not tolerate the expression of race-based "stereotypes and insults" on The Hub. Defendants deny the remaining allegations in Paragraph 51, including but not limited to that Thomson Reuters "focus[ed] on the attribution of characteristics on the basis of skin color" and "singled out" white employees for "targeted abuse."

52.    Defendants deny the allegations in Paragraph 52, including but not limited to that Thomson Reuters asked or encouraged employees to accept negative racial stereotypes and that Thomson Reuters created a racially hostile environment.

53.     Defendants deny the allegations in Paragraph 53. Defendants affirmatively state that the employee who posted about having an accountability partner, *see supra* ¶ 50, explained that when they discussed "racism and what we can do to be a part of the solution," her accountability partner said she "incorporated this into her Workday goals so that it was not something that could [be] put on the back burner or only done outside of work." Defendants deny that one employee's personal reflection and suggestion constituted messaging or instruction from Thomson Reuters to its employees. Defendants affirmatively state that the employee in question was not a Diversity and Inclusion staff member.

54.     Defendants deny the allegations in Paragraph 54.

55.     Defendants deny the allegations in Paragraph 55. Defendants affirmatively state that the New York chapter of Women at Thomson Reuters, in partnership with three other chapters of Women at Thomson Reuters—all of which are voluntary, employee-driven groups— held a discussion of *White Fragility* by DiAngelo, and that one of the questions the employee leading the discussion posed for readers to consider was, "After reading the book, what is your understanding of whiteness and how it relates to institutional power?"

56.     With respect to the allegations in the first sentence of Paragraph 56, Kriegman's reference to "these topics" is unclear and therefore Defendants are unable to admit or deny. With respect to the allegations in the second sentence of Paragraph 56, Kriegman's reference to "frequently" and "things like" is vague and imprecise and therefore Defendants are unable to admit or deny this characterization. Defendants affirmatively state that one employee stated her opinion, in the week after George Floyd's murder, that Thomson Reuters should "issue a strong statement condemning racial injustice and police violence," and that she "hope[d] any statement [Thomson Reuters] issues include[s] the phrase 'Black Lives Matter.'" Defendants deny the

11

remaining allegations in this paragraph, including but not limited to any allegation or implication that one employee's personal reflection and suggestion constituted messaging or instruction from Thomson Reuters to its employees.

57.     Defendants deny the allegations in the first sentence of Paragraph 57. Defendants affirmatively state that a Thomson Reuters employee posted a comment during the voluntary 21-Day Challenge, in which the employee **quoted** a *New York Times* article from the challenge as follows: "engaging public identities exacts a psychological toll, as one study participant hinted when she described a 'relaxed day' at work for her as one during which she didn't have to care what white people thought." The allegations in the second sentence of Paragraph 57 are vague, imprecise, and hypothetical, and Defendants therefore lack knowledge or information sufficient to admit or deny them. Defendants deny the allegations in the third sentence of Paragraph 57, including but not limited to that any Thomson Reuters employees were or are treated with "derogatory dismissiveness."

58.     Defendants deny the allegations in Paragraph 58. Defendants affirmatively state that consistent with and pursuant to company policy, Thomson Reuters removed the post described in Paragraph 57 when Kriegman flagged it, and that the Company then reviewed and reinstated the post.

59.     Defendants deny the allegations in Paragraph 59.

60.     Defendants deny the language quoted in Paragraph 59 was posted on The Hub and thus deny that Thomson Reuters either "removed" or did not "remove[]" it.

61.     Defendants deny the allegations in Paragraph 61.

62.     In response to the allegations in Paragraph 62, Defendants state that the allegation that certain posts were "frequent[]" and "lengthy" is too vague and imprecise for Defendants to

possess knowledge or information sufficient to admit or deny. Defendants affirmatively state that some employees occasionally shared articles and posts on issues related to racism and diversity on The Hub.

63.     With respect to the allegations in Paragraph 63, Defendants lack knowledge or information sufficient to admit or deny what "became clear" to Kriegman. Defendants deny all remaining allegations in this paragraph.

64.     Defendants admit the allegations in the first sentence of Paragraph 64. Defendants deny that *How White People Profit from Identity Politics* was a separate book included in the list and affirmatively state that it is the subtitle of *The Possessive Investment in Whiteness*. Defendants otherwise admit the allegations in the second sentence of Paragraph 64.

65.     The allegation that Thomson Reuters announced mandatory training on "these issues" is too vague and imprecise for Defendants to possess knowledge or information sufficient to admit or deny the allegations with respect to this term. The allegation that this training was "part of [Thomson Reuters'] patterns of employment, practices, and policies" is also too vague and imprecise for Defendants to possess knowledge or information sufficient to admit or deny. Defendants affirmatively state that Thomson Reuters announced in early 2021 that it would begin offering training called "Breaking Bias" later that year and that all employees would be enrolled in the training. Defendants affirmatively state that "Breaking Bias" presented information on how "as human beings we are subject to a variety of cognitive biases that influence thinking, perception, and decision making" and can "creat[e] mental blind spots—especially when we're stressed, under pressure, or in a hurry" and described five main categories of biases that shape everyday thinking: Similarity Bias, which "arise[s] from our innate motivation to distinguish between friends and foes"; Expedience Bias, which "save[s] mental

energy by directing our focus to the most readily available, recallable, and recent information"; Experience Bias, which "stem[s] from two unconscious beliefs: that we see things as they are, and that we know all there is to know"; Distance Bias, "the brain's natural tendency to value people, events, and things based on their proximity to us in time and space"; and Safety Bias, where "we assign far greater weight to potential losses that we do to potential gains."

66.    Defendants lack knowledge or information sufficient to admit or deny what Kriegman felt or perceived. Defendants deny the remaining allegations in Paragraph 66, including but not limited to that Thomson Reuters "became permeated by . . . demeaning group-identity propaganda that contained racial insults and stereotypes."

67.    Defendants deny that Thomson Reuters created a hostile work environment. Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph 67 that pertain to Kriegman's emotions and motivations. Defendants admit only that Kriegman requested a leave of absence in early 2021. Defendants affirmatively state Kriegman was absent from work from January 25 to March 28, 2021, through a combination of COVID-19 emergency time, sick days, vacation days, floating holidays, and an unpaid leave. Defendants affirmatively state that Kriegman did not inform Thomson Reuters that the purpose of his leave of absence was "to cope with the increasingly hostile work environment."

68.    Defendants lack knowledge or information sufficient to admit or deny what Kriegman "concluded" and "was determined" to do. Defendants deny all remaining allegations in this paragraph, including but not limited to that Thomson Reuters "fostered and maintained" a racially hostile environment that "demeaned not only white people but also Black Americans and employees and other minorities" and that the Company encouraged "discussion around . . . race-based political and social indoctrination."

14

69.     Defendants deny that between March 29, 2021, and his termination on June 7, 2021, Kriegman only shared two posts on The Hub.

70.     Defendants admit the allegations in Paragraph 70.

71.     The allegations in this paragraph consist of Kriegman's characterizations of his March 30, 2021 post, which speaks for itself.

72.     The allegations in this paragraph consist of Kriegman's characterizations of his March 30, 2021 post, which speaks for itself.

73.     Defendants admit the allegations in Paragraph 73.

74.     Defendants deny the allegations in Paragraph 74. Defendants affirmatively state that Kriegman was contacted by a Thomson Reuters employee other than Budde and informed both that his post had been removed, and of the steps in the moderation process.

75.     Defendants admit only that Kriegman's March 30, 2021 post was reinstated. Defendants deny that the temporary removal of his post constituted harassment.

76.     The allegations in this paragraph consist of Kriegman's characterization of his motivation for posting on The Hub, of which Defendants lack knowledge or information sufficient to admit or deny, and of Kriegman's characterization of the post, which speaks for itself. Defendants affirmatively state that on May 4, 2021, Kriegman posted a 12,040-word post on The Hub entitled, "BLM is Anti-Black Systemic Racism."

77.     The allegations in this paragraph appear to consist of Kriegman's characterizations of his May 4, 2021 post, which speaks for itself. Defendants otherwise deny the allegations in Paragraph 77.

78.     Defendants deny that Exhibit A to Kriegman's Complaint is a copy of Kriegman's May 4, 2021 post. Defendants affirmatively state that Exhibit A is a copy of a later post

Kriegman made to The Hub, which was very similar to the May 4, 2021 post and had a different title. Defendants affirmatively state that the May 4, 2021 post was 12,040 words long and otherwise deny the allegations in this paragraph.

79.     Defendants lack knowledge or information sufficient to admit or deny what Kriegman intended. With respect to the remaining allegations in this paragraph, Kriegman's May 4, 2021 post speaks for itself. Defendants otherwise deny the allegations in this paragraph.

80.     The allegations in this paragraph consist of Kriegman's characterizations of his May 4, 2021 post, which speaks for itself.

81.     Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

82.     Defendants admit only that Kriegman's post was flagged by employees and removed pursuant to The Hub community standards, and that Reuters News, a global news agency, is part of Thomson Reuters. Defendants deny the remaining allegations in this paragraph.

83.     Defendants deny the allegations in Paragraph 83. With respect to the allegations in the first sentence of this paragraph, Defendants affirmatively state that some posts on The Hub that included the statement "Black lives matter," expressed support for the organization Black Lives Matter, mentioned racism, or expressed support for other political causes were not permanently removed from The Hub, and that Kriegman's May 4, 2021 post was removed consistent with and pursuant to Company policy. Defendants affirmatively state that posts on The Hub that Kriegman flagged, some of which included the statement "Black lives matter," expressed support for the organization Black Lives Matter, mentioned racism, or expressed support for other political causes, were removed from The Hub after Kriegman flagged them, and then were reviewed and reinstated.

84.    Defendants deny the allegations in Paragraph 84. Defendants affirmatively state that Budde called Kriegman on May 4, 2021 and left a message; that Kriegman returned Budde's call the next morning, May 5, 2021; that in this conversation, Kriegman stated multiple times his view that Black Lives Matter content on The Hub was creating a hostile work environment for him; that in response to Kriegman's inquiry about how complaints about posts on The Hub are handled, Budde informed him that if posts are flagged, they are reviewed; and that Budde informed Kriegman that he could flag posts he thought did not meet community standards.

85.    Defendants admit the allegations in Paragraph 85.

86.    Defendants deny the allegations in Paragraph 86. Defendants affirmatively state that on May 5, 2021, Kriegman flagged 117 items on The Hub.

87.    Defendants deny the allegations in Paragraph 87. Defendants affirmatively state that one or more of the posts that Kriegman flagged on May 5, 2021 contained the terms "white fragility" and/or "white privilege," and that, after automatically removing the posts flagged by Kriegman and then reviewing them, Thomson Reuters reinstated these posts to The Hub consistent with and pursuant to Company policy.

88.    Defendants admit that Budde informed Kriegman on May 12, 2021, that his post would not be reinstated pursuant to Company policy and otherwise deny the allegations in this paragraph.

89.    Defendants admit the allegations in Paragraph 89.

90.    Defendants deny the allegations in the first sentence of this paragraph and affirmatively state that Budde told Kriegman she did not know the specifics of the determination about his post because she was not the decision maker. Defendants admit the allegations in the second sentence of this paragraph.

91.     Defendants admit the allegations in Paragraph 91.

92.     Defendants admit the allegations in the first sentence of this paragraph. As to the remaining sentences in this paragraph, Defendants lack knowledge or information sufficient to admit or deny what Kriegman perceived and otherwise deny the remaining allegations in this paragraph. Defendants affirmatively state that Kriegman told Moulinier about his May 4, 2021 post and Moulinier offered coaching to Kriegman on how he, as a leader in the Company, could express his views and engage professionally with people with whom he disagreed.

93.     Defendants deny the allegations in Paragraph 93. Defendants affirmatively state that Kriegman spoke with Juvier on May 17, 2021, and with Juvier and Budde on May 25, 2021.

94.     Defendants deny the allegations in Paragraph 94. Defendants lack knowledge or information sufficient to admit or deny what Kriegman "attempted" in this conversation. Defendants affirmatively state that in Kriegman's conversation with Juvier and Budde on May 25, 2021, he repeatedly challenged Juvier to explain what was factually or statistically incorrect about his May 4, 2021 post.

95.     Defendants deny the allegations in Paragraph 95. Defendants affirmatively state that Budde explained, in part, that decisions regarding posts on The Hub are made on a case-by-case basis; that she did not know the exact processes of moderation of The Hub; and that Thomson Reuters had determined that Kriegman's post was not appropriate for The Hub pursuant to Company policy.

96.     Defendants deny the allegations in Paragraph 96. Defendants affirmatively state that Budde was not involved in the decision to remove the post and did not know details about the decision and stated as such to Kriegman.

97.     Defendants admit the allegations in Paragraph 97.

18

98.     Defendants deny the allegations in Paragraph 98.

99.     Defendants deny the allegations in Paragraph 99. Defendants affirmatively state that any posts that Kriegman flagged on The Hub containing any of the alleged phrases were automatically removed, reviewed, and then reinstated.

100.    Defendants deny the allegations in Paragraph 100. Defendants affirmatively state that an employee posted a comment in response to Kriegman's post that included the following language: "Until we are willing and able to acknowledge our blind spots, privilege that comes with the whiteness of our skin, and the reality of systemic racism, we cannot begin to help address the issues people of color in our country face. . . . White folks trying to 'help' by whitesplaining how and why a movement that does not belong to us is harming people of color only does further harm." Defendants affirmatively state that this comment was removed from The Hub.

101.    Defendants deny the allegations in Paragraph 101.

102.    Defendants deny the allegations in Paragraph 102.

103.    The allegations that certain posts on The Hub were "long," and those pertaining to how Thomson Reuters treated "such posts," are too vague and imprecise for Defendants to possess knowledge or information sufficient to admit or deny them. Defendants affirmatively state that some posts on The Hub that included the statement "Black lives matter," expressed support for the organization Black Lives Matter, mentioned racism, or expressed support for other political causes were not permanently removed from The Hub. Defendants deny that by not removing a post from The Hub, Thomson Reuters "approved" the post.

104.    Defendants deny the allegations in Paragraph 104.

105.    Defendants deny the allegations in Paragraph 105.

19

106. Defendants deny the accuracy of Kriegman's characterization of his conversation with Josh Lemaitre and deny that Lemaitre was "[Kriegman's] project manager." Defendants affirmatively state that Lemaitre was the project lead for a project to which Kriegman had been assigned; that Kriegman told Lemaitre that he felt that Thomson Reuters was a hostile work environment for him; that Lemaitre suggested Kriegman focus his work hours on his work assignments and job responsibilities; that out of frustration with Kriegman's refusal to complete his assigned project, Lemaitre told Kriegman to "just f---ing do your job"; and that Kriegman then shouted, pointed at Lemaitre through the screen, told Lemaitre he should "just f---ing do *your* job," and called Lemaitre a "f---ing racist."

107. As to the first sentence of this paragraph, Defendants state that the conversation between Kriegman and Lemaitre described in Paragraph 106 occurred after Thomson Reuters provided opportunities for employees to learn about topics related to diversity and inclusion, including unconscious bias. Defendants affirmatively state that Thomson Reuters did not encourage employees to engage in diversity and inclusion issues instead of completing required job-related tasks, to spend the majority of their work hours engaging in diversity and inclusion issues, or to refuse to complete work tasks so that they could instead focus on diversity and inclusion issues. Defendants otherwise deny the allegations in the first sentence of Paragraph 107. As to the second sentence of this paragraph, Defendants lack knowledge of all conversations between employees, and thus lack knowledge or information sufficient to admit or deny the allegations.

108. With respect to the allegations in the first sentence of this paragraph, Defendants admit only that Lemaitre had not had occasion to suggest to other employees that they should

complete work assignments rather than disseminate political opinions on The Hub. Defendants otherwise deny the allegations in this paragraph.

109.    The allegations in this paragraph consist of Kriegman's characterizations of his May 26, 2021 email to Moulinier and Peterson, which speaks for itself.

110.    Defendants deny the allegations in Paragraph 110. Defendants affirmatively state that Kriegman received a response to this email from Moulinier in a conversation the following day, and that Peterson responded to this email by initiating an investigation into Kriegman's complaint.

111.    Defendants admit the allegations in Paragraph 111.

112.    The allegations in this paragraph consist of Kriegman's characterizations of his May 27, 2021 email to Moulinier, Budde, and Peterson, which speaks for itself.

113.    Defendants deny the allegations in Paragraph 113. Defendants affirmatively state that Moulinier and Kriegman spoke on May 27 and 28, 2021, and that in those conversations, Moulinier agreed to accommodate Kriegman's request to work on a different project than the one he was working on with Lemaitre, stated that Thomson Reuters could not accommodate Kriegman's refusal to work on his assignments while the issue of his post was being addressed, told Kriegman that he could not condition his willingness to perform his data science work on his ability to disseminate his post in the workplace, and informed Kriegman that if he refused to work on his assignments, Thomson Reuters would consider terminating his employment.

114.    The allegations in this paragraph consist of Kriegman's characterizations of his two additional emails to Moulinier and Peterson, which speak for themselves. Defendants deny that Moulinier communicated a "threat" to Kriegman and deny that Moulinier told Kriegman he "could face termination for complaining about a racially hostile environment."

21

115.    Defendants deny the allegations in Paragraph 115.

116.    Defendants admit only that Kriegman posted a revised version of his article on The Hub on May 28, 2021. Defendants deny the remaining allegations in this paragraph, including but not limited to the accuracy of Kriegman's characterization of Budde's and Juvier's feedback.

117.    With respect to the allegations in Paragraph 117, Defendants admit only that Kriegman emailed Budde and Juvier on May 28, 2021. The email speaks for itself.

118.    With respect to the first sentence of this paragraph, Defendants admit only that Kriegman's May 28, 2021 post received many responses from employees who found the post offensive, and that Thomson Reuters removed this post from The Hub for further review consistent with and pursuant to Company policy. Defendants deny the remaining allegations in the first sentence. With respect to the second sentence, Defendants lack knowledge or information sufficient to admit or deny what subjectively "motivat[ed]" the persons who made the comments in question to post them.

119.    Defendants deny that "responses" included the quoted statements and deny the accuracy of the quote. Defendants affirmatively state that one response from one employee, the same employee quoted in Paragraph 100, stated in part: "As a white person I am embarrassed and ashamed for you. We, as white folks, should NEVER presume to speak for people of color – which is what you've chosen to do."

120.    Defendants deny the allegations in Paragraph 120. Defendants affirmatively state that one post from one employee, the same employee quoted in Paragraphs 100 and 119, included the language quoted in this paragraph.

121.    Defendants admit only that Thomson Reuters did not "warn" the one employee who wrote a comment that includes the language described in Paragraphs 100, 119, and 120 "to be silent." Any broader generalization about unspecified "employees" who may have used the term "systemic racism" in unspecified instances and contexts is too vague and imprecise for Defendants to possess knowledge sufficient to admit or deny the allegation. Defendants deny the remainder of the allegations in this paragraph, including but not limited to that the term "systemic racism" "demean[s] white people."

122.    Defendants deny the allegations in Paragraph 122. Defendants affirmatively state that one employee wrote—in a post that was flagged and removed from The Hub, consistent with Company policy—"Normally, I don't feed the trolls"; described Kriegman's post as "nonsense," "laughable," and "embarrassing," and posed the rhetorical question, "Is it worth engaging with these sources . . .? No." Defendants affirmatively state that this employee's comment was flagged and removed, and that this employee received coaching regarding appropriate use of The Hub and specifically the use of the term "trolls."

123.    Defendants deny the allegations in Paragraph 123. Defendants affirmatively state that the same employee who is quoted in Paragraph 122 further stated, in response to Kriegman's May 28, 2021 post and discussion in the comments: "I do not believe there is any point in trying to engage in a blow-by-blow refutation of your argument, and I will not do so. My unwillingness to do so doesn't signal the strength of your argument. If someone says, 'The KKK did lots of good things for the community—prove me wrong,' I'm not obligated to do so."

124.    Defendants deny the allegations in Paragraph 124. Defendants affirmatively state that the comments identified in Paragraphs 119, 120, 122, and 123 were posted on The Hub and not "made publicly."

125.    Defendants deny the allegations in Paragraph 125.

126.    Defendants admit only that an employee wrote a message to Kriegman on June 1, 2021 that included the following statements: "I appreciate the amount of research and effort that must have gone into your BLM post. It was well researched, written and most importantly, convincing."; "it must have taken a lot of courage to put these ideas out"; and "I think the evidence of that hostility is pretty clear in the comments section of your post." Defendants otherwise deny the allegations in this paragraph.

127.    Defendants deny the allegations in Paragraph 127. Defendants affirmatively state that the employee who wrote the message described in Paragraph 126 referred to "evidence of . . . hostility" in "the comment sections of [Kriegman's] post," which was on The Hub, not "publicly available."

128.    Defendants admit the allegations in Paragraph 128.

129.    Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph 129.

130.    Defendants deny the allegations in Paragraph 130. Defendants affirmatively state that on June 2, 2021, Kriegman emailed Budde, Peterson, and Juvier and that in this email, Kriegman forwarded the message identified in Paragraphs 126 through 128 above. The remaining allegations in this paragraph consist of Kriegman's characterizations of this email, which speaks for itself.

131.    Defendants deny the allegations in Paragraph 131. Defendants affirmatively state that consistent with and pursuant to Company policy, Thomson Reuters removed Kriegman's May 28, 2021 post as well as the comments to it about which Kriegman had complained.

132.    Defendants deny the allegations in Paragraph 132. Defendants affirmatively state that Kriegman wrote a second email to Budde, Peterson, and Juvier on June 2, 2021. The remaining allegations in this paragraph consist of Kriegman's characterizations of that email, which speaks for itself.

133.    Defendants admit only that Budde called Kriegman to inform him that his revised post would be removed from The Hub. Defendants deny the remaining allegations in this paragraph.

134.    Defendants deny the allegations in Paragraph 134. Defendants affirmatively state that Kriegman wrote a third email to Budde, Peterson, and Juvier on June 2, 2021, and that email speaks for itself.

135.    Defendants deny Kriegman's characterization of Peterson's communication to him and affirmatively state that Peterson informed Kriegman that his concern had been received.

136.    Defendants deny the allegations in Paragraph 136. Defendants affirmatively state that Kriegman posted to The Hub twice on June 2, 2021—a third posting of a version of his May 4 article with a new title, "BLM Spreads Falsehoods That Have Led to the Murders of Thousands of Black People in the Most Disadvantaged Communities," and a fourth version of the article, with a new "NOTE" at the top discussing his previous version of the post—and that these posts speak for themselves. Defendants lack knowledge or information sufficient to admit or deny whether Kriegman acted "[i]n frustration" when taking these actions.

137.    Defendants deny the allegations in Paragraph 137. Defendants affirmatively state that Thomson Reuters removed the two posts described *supra* Paragraph 136 from The Hub, consistent with and pursuant to Company policy.

138.    Defendants admit only that on June 2, 2021, Kriegman sent three emails to Budde, Peterson, and Juvier. *See supra* ¶¶ 130–34. The remaining allegations in this paragraph consist of Kriegman's characterizations of at least one of these emails. The emails speak for themselves.

139.    Defendants deny the allegations in Paragraph 139. Defendants affirmatively state that Budde informed Kriegman on June 2, 2021 that his access to The Hub would be removed for the duration of a leave he initiated on June 1.

140.    Defendants deny the allegations in Paragraph 140. Defendants affirmatively state that on June 3, 2021, Kriegman disseminated a writing he titled "My Personal Experience of Racism at Thomson Reuters" by, *inter alia*, emailing it and sending it via a Teams message to more than 140 Thomson Reuters employees, including several senior leaders.

141.    Defendants admit the allegations in Paragraph 141.

142.    Defendants admit that Thomson Reuters terminated Kriegman's employment, effective immediately, on June 7, 2021. The remaining allegations in this paragraph consist of Kriegman's characterization of Budde's June 7, 2021 email to Kriegman, which speaks for itself.

143.    Defendants deny the allegations in Paragraph 143.

144.    Defendants deny the allegations in Paragraph 144.

145.    Defendants deny the allegations in Paragraph 145.

146.    Defendants deny the allegations in Paragraph 146.

147.    Defendants deny the allegations in Paragraph 147.

148.    Defendants assert and incorporate their responses to Paragraphs 1 through 147 as if fully stated herein.

149.    Defendants deny the allegations in Paragraph 149.

150.    Defendants deny the allegations in Paragraph 150.

151.    Defendants deny the allegations in Paragraph 151. Defendants affirmatively state that the following phrases appeared on The Hub in posts by one or more employees: "a pair of White Privilege glasses," "whiteness," and "white fragility."

152.    Defendants deny the allegations in Paragraph 152. Defendants affirmatively state that the article, "A Sociologist Examines the 'White Fragility' That Prevents White Americans from Confronting Racism," and the books *White Fragility: Why It's So Hard for White People to Talk About Racism* and *Habits of Whiteness* were cited by employees on The Hub.

153.    Defendants lack knowledge or information sufficient to admit or deny whether or to what degree Kriegman was "distressed." Defendants deny the remaining allegations in Paragraph 153. Defendants affirmatively state that Kriegman took a leave of absence from Thomson Reuters in early 2021 and was absent from work from January 25 to March 28, 2021, through a combination of COVID-19 emergency time, sick days, vacation days, floating holidays, and an unpaid leave. Defendants affirmatively state that Kriegman did not inform Thomson Reuters that he took this leave because of an alleged "constant drumbeat of racially offensive communications."

154.    Defendants deny the allegations in Paragraph 154.

155.    Defendants deny the allegations in Paragraph 155.

156.    Defendants admit that Kriegman requested a right to sue letter from the Massachusetts Commission Against Discrimination.

157.    Defendants deny the allegations in Paragraph 157.

158.    Defendants deny the allegations in Paragraph 158.

159.    Defendants deny that Kriegman is entitled to the relief requested or to any relief whatsoever.

160.    Defendants assert and incorporate their responses to Paragraphs 1 through 159 as if fully stated herein.

161.    Defendants deny the allegations in Paragraph 161. Defendants affirmatively state that Kriegman complained about an allegedly racially hostile environment at Thomson Reuters, and that Thomson Reuters investigated his complaints.

162.    Defendants admit only that Kriegman complained about what he allegedly perceived as a racially hostile environment to Budde, Juvier, Moulinier, Peterson, and Lemaitre; and that Lemaitre, out of frustration with Kriegman's refusal to complete his assigned work, told Kriegman to "just f---ing do your job." Defendants deny the remaining allegations in Paragraph 162, including but not limited to that Lemaitre was Kriegman's "immediate boss" or "manager," and that Kriegman experienced racial hostility or harassment at Thomson Reuters.

163.    Defendants deny the allegations in the first sentence of Paragraph 63. With respect to the second sentence, Defendants admit only that Kriegman was occasionally expected to produce some work-related content for The Hub. Defendants deny the remaining allegations in the second sentence.

164.    Defendants deny the allegations in Paragraph 164. Defendants affirmatively state that The Hub informed employees of upcoming events and news about the Company; that occasionally some employees, including Kriegman, were expected to produce content for The Hub related to their job functions; and that the work-related content employees produced for the Hub could be evaluated.

165.    Defendants deny the allegations in Paragraph 165.

166.    Defendants deny the allegations in Paragraph 166.

167.    Defendants deny the allegations in Paragraph 167.

168.    Defendants deny the allegations in Paragraph 168.

169.    Defendants admit that Kriegman requested a right to sue letter from the Massachusetts Commission Against Discrimination.

170.    Defendants deny the allegations in Paragraph 170.

171.    Defendants deny the allegations in Paragraph 171.

172.    Defendants deny that Kriegman is entitled to the relief requested or to any relief whatsoever.

173.    Defendants assert and incorporate their responses to Paragraphs 1 through 172 as if fully stated herein.

174.    Defendants admit only that Mass. Gen. Laws ch. 151B defines and prohibits unlawful discrimination because of race in the employment context in Massachusetts. Defendants deny that they discriminated against Kriegman based on his race.

175.    Defendants deny the allegations in Paragraph 175.

176.    Defendants deny the allegations in Paragraph 176.

177.    Defendants deny the allegations in Paragraph 177.

178.    Defendants deny the allegations in Paragraph 178.

179.    Defendants deny the allegations in Paragraph 179.

180.    Defendants deny the allegations in Paragraph 180.

181.    Defendants deny the allegations in Paragraph 181.

182.    Defendants deny the allegations in Paragraph 182.

183.    Defendants deny the allegations in Paragraph 183.

184.    Defendants deny the allegations in Paragraph 184.

185.    Defendants deny the allegations in Paragraph 185.

186.    Defendants deny the allegations in Paragraph 186.

187.    Defendants admit that Kriegman requested a right to sue letter from the
Massachusetts Commission Against Discrimination.

188.    Defendants deny the allegations in Paragraph 188.

189.    Defendants deny the allegations in Paragraph 189.

190.    Defendants deny the allegations in Paragraph 190.

191.    Defendants deny that Kriegman is entitled to the relief requested or to any relief
whatsoever.

192.    Defendants assert and incorporate their responses to Paragraphs 1 through 191 as
if fully stated herein.

193.    Defendants admit only that Mass. Gen. Laws ch. 151B defines and prohibits
unlawful discrimination because of race in the employment context in Massachusetts.
Defendants deny that they discriminated against Kriegman based on his race.

194.    Defendants deny the allegations in Paragraph 194.

195.    Defendants admit that Kriegman requested a right to sue letter from the
Massachusetts Commission Against Discrimination.

196.    Defendants deny the allegations in Paragraph 196.

197.    Defendants deny the allegations in Paragraph 197.

198.    Defendants deny the allegations in Paragraph 198.

199.    Defendants deny that Kriegman is entitled to the relief requested or to any relief
whatsoever.

The remaining paragraphs of the Complaint (designated with lower-case Roman numerals) consist of Kriegman's prayer for relief. Defendants deny that Kriegman is entitled to the relief requested or to any relief whatsoever.

Defendants further deny all allegations in the Complaint not expressly admitted or denied.

## AFFIRMATIVE DEFENSES

1.      Kriegman's Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

2.      Kriegman has alleged no damages attributable to Defendants.

3.      Defendants are not liable for punitive damages.

4.      Kriegman has failed to mitigate his damages, if any.

5.      Kriegman has no basis upon which to recover attorney's fees.

6.       Defendants reserve the right to assert additional affirmative defenses as discovery continues.

WHEREFORE, Defendants pray that the Court grant judgment on the merits dismissing Kriegman's Complaint, that Kriegman takes nothing therefrom, and that Defendants be awarded their costs, disbursements, and reasonable attorney's fees.

Dated: August 30, 2024

**s/ Stephen J. Teti**
Stephen J. Teti (BBO # 569332)
**LOCKRIDGE GRINDAL NAUEN PLLP**
265 Franklin Street, Suite 1702
Boston, MA 02110
Telephone: (617) 535-3763
sjteti@locklaw.com

David W. Asp (MN #0344850)
(*pro hac vice* admission pending)
Jennifer L. M. Jacobs (MN # 0328753)
(*pro hac vice* admission pending)
Antonia M. Konkoly (MN # 0504377)
(*pro hac vice* admission pending)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
dwasp@locklaw.com
jlmjacobs@locklaw.com
amkonkoly@locklaw.com

**ATTORNEYS FOR DEFENDANTS**

---

**Certificate of Service**

I, Stephen J. Teti, hereby certify that a copy of the foregoing Defendants' Answer to Plaintiff's Complaint and Jury Demand, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 30, 2024.